| | |
|---|---|
| ROBINSON BROG LEINWAND GREENE<br>GENOVESE & GLUCK P.C.<br>875 Third Avenue<br>New York, New York 10022<br>Fred B. Ringel<br>A. Mitchell Greene<br>(212) 603-6300<br>*Attorneys for the Debtor and Debtor in Possession* | Hearing Date: 12/8/16<br>Hearing Time: 10:00 a.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

In re:

**West 41 Property LLC**

                           Debtor.

----------------------------------------------------------X

Chapter 11

Case No: 16-22393 (RDD)

## DECLARATION OF DAVID GOLDWASSER IN REPLY TO RESPONSE OF CLAIM OBJECTION TO CLAIM NO 7 FILED BY US SUITE LLC

DAVID GOLDWASSER, does hereby affirm the following under penalties of perjury:

    1. I am the managing member of GC Realty Advisors LLC which is the Manager of West 41 Property LLC (the "<u>Debtor</u>"). I make this declaration upon my own personal knowledge, unless expressly stated to be upon information and belief, and as to those matters, I believe this declaration to be true based upon my knowledge of the Debtor's business and financial affairs since its acquisition, on April 1, 2015, of the real property and improvements located at 440 West 41st Street, New York New York (the "<u>Property</u>") for $28 million. I was also involved in the negotiations which led to the assignment of the contract of sale (the "<u>Contract</u>") for the acquisition of the property from West 29th Investors LLC ("<u>West 29th</u>"), the original contract vendee for the Property, to the Debtor.

    2. I have read the Declaration of Tomer Shohat dated November 2, 2016 (the "<u>Shohat Decl.</u>") submitted in support of claim number 7 filed by US Suite which alleges it is

owed $28,000,000 (the "US Suite Claim"). I have never formally met Tomer Shohat. Accordingly, I have never made any representations to Tomer Shohat regarding the Property. Similarly, I was not involved in negotiating the Contract of Sale for the Property between US Suite and West 29th. Therefore, I have never made nor have I authorized any representations to be made by the Debtor in connection with the Contract of Sale. When the Debtor agreed to take the assignment of the Contract of Sale, it agreed to do so at closing and to be bound only by the valid provisions of the Contract, if any, which survived the closing and delivery of the deed for the Property.

3. Mr. Shohat's Declaration is full of parole evidence and hearsay regarding alleged conversations between him and other parties that are not reflective of the terms of or otherwise set forth in the provisions of the Contract. Having read his Declaration, it is not even clear to me that he has any authority to speak for US Suite as he appears to be a spokesperson for U-Trend New York Investment L.P., an investor in US Suite and that entity is, admittedly, only an indirect 35% owner of US Suite. Shohat Decl. at ¶6. Previously, he's only appeared as a plaintiff in lawsuits suing US Suite.

4. The Debtor was not involved in the litigation which is described as length in Mr. Shohat's Declaration, with the exception of appearing at a hearing on March 30th to seek an extension of time to close and for my attorney to advise the Court of the assignment of the Contract which was to be effective at closing contemporaneous with the payments of the purchase price. The Debtor was also not a party to the hearsay conversations between Assa and US Suite which are allegedly recounted by Shohat in his declaration. While Mr. Shohat may have confirmed with Mr. Assa -- at some unknown date, at some unknown time, in some unknown context and for some unknown purpose--that he was the "real buyer" of the Property as stated in paragraph 16 of his Declaration, putting aside the

obvious inadmissibility of that hearsay statement, Shohat is careful not to say when those conversations took place or the context.

5.  But what is plain to me is that none of the statements or representations attributed to the Debtor were in fact made by the Debtor. Indeed, Shohat incorrectly states that "but for" certain material representations, Suite LLC would not have been induced to sell the Property to the Debtor's predecessor in interest. Shohat Decl. at ¶20. However, US Suite <u>never</u> sold the Property to anyone other than the Debtor. Again, there was but one closing, in the New York Supreme Court, where US Suite sold the property to West 41 Property LLC.

6.  What is clear is that as the date to close on the contract drew near, there came a point when West 29th realized it would be unable to close the acquisition of the Property. At that point, the Debtor agreed to take an assignment and close the Contract as a "white knight" with the full knowledge of all parties who willingly took the $28,000,000 I had borrowed from Stabilis and closed the sale and deeded the property to the Debtor. My attorney, Michael Leon made it clear at the hearing before Judge Ramos in New York Supreme Court on March 30, 2015 that the Contract of Sale was being assigned at closing and US Suite's counsel, David Jaroslawicz[1], on the record at that hearing, consented to the assignment of the Contract and thereafter closed the sale and transferred the Property to the Debtor. At that hearing, where my attorneys sought an extension to close until April 1, 2015, the following colloquy took place:

> MR. LEON: Yes, your Honor.
>  One other issue that has arisen. The parties
> contemplated an assignment be transferred following receipts
> of the proceeds of the sale and to escrow. After the

---

[1] In other litigation between Mr. Suky and Mr. Shohat, Mr. Jaroslawicz represented Mr. Shohat personally.

{00824951.DOCX;5 }

> receipts of those proceeds are acknowledged the sellers have
> agreed to execute the contemplated assignment.
> THE COURT: Acceptable?
> MR JAROSLAWICZ: Acceptable, your Honor.

Transcript of hearing, 3/30/15 at 25, lines 12-18. Mr. Shohat's statement that "440 West 41 LLC and the other indirect owners of US Suite were opposed to any sale other than to Salim (Solly) Assa or an entity owned or controlled by him" [Shohat Declaration at ¶12] is plainly false .[2]

7. Similarly, Mr. Shohat misunderstands the legal effect of the Contract of Sale and what happens to the provisions of a contract of sale that do not expressly survive closing. His Declaration states that the Contract provides that the Debtor was to "assume the Gemini Capricorn loan or pay an additional $1 million in purchase price to Suite LLC at closing." Shohat Declaration at ¶18. It is understandable that Shohat does not actually quote the provision of the Contract of Sale.

8. Paragraph 37(b) of the Supplemental Rider which addresses the Gemini Capricorn obligation states as follows:

> Paragraph 4(B) of the First Rider is stricken in its entirety and replaced with the following:
> Subject to the consent of Gemini Capricorn lnc. ("Gemini"), Purchaser shall take title to the Premises subject to, and assume the obligations or the alleged second mortgage/loan (the "Alleged Second Mortgage") held by Gemini in the alleged original principal sum of $1,000,000.00 and shall further indemnify and hold Seller harmless with respect to same. In the event that Gemini shall not consent to the assumption of the Alleged Second Mortgage by Purchaser, the purchase price shall be increased by the outstanding balance of the Alleged Second Mortgage and the same shall be satisfied and paid in full at closing.

---

[2] Indeed, even Mr Shohat's description of Judge Ramos' order approving the Contract of Sale as "an order authorizing the sale of the property to Mr. Assa" is plainly wrong. Shohat Declaration at ¶17. The order, which is attached to US Suite's proof of claim, authorizes the sale to "West 29th Street Investors, LLC d/b/a West 4lst Street Property Investors" and not to Assa personally. Sale Order, February 23, 2015 (Ramos, J.)

{00824951.DOCX;5 }

9. My understanding of this issue is that Gemini Capricorn <u>does not hold a second mortgage against the Property nor does US Suite owe it any money and therefore nothing was due under this paragraph.</u> Indeed, the only claim filed against the estate that is remotely related to this is a claim filed by Alberto Cohen (which is subject to a claim objection) and which is not the claim identified in the Contract.

10. With regard to the "obligation to Gemini Capricorn", I would respectfully direct the Court to Exhibit 2 to Shohat's Declaration, which is a copy of US Suite's balance sheet dated April 1, 2015, the date of the closing of the Contract. Under "Other Current Liabilities" there is a line item "Loan from Gemini Capricorn" showing an amount due of $0.00. Thus, on the date of the closing, US Suite owed Gemini Capricorn nothing. Hence, there was no liability for section 37(b) of the Supplemental Rider to apply to.

11. Further, my attorney's advise me that the time to assume or pay the obligation to pay the obligation due Gemini Capricorn (if it existed) was at closing, not two years after closing. That is because the obligation to pay the purchase price under a contract of sale merges into the deed when it is delivered at closing.

12. Since (i) on April 1, 2015, nothing was owed to Gemini Capricorn as US Suite admitted through the balance sheet attached as Exhibit B to the Shohat's Declaration, (ii) there is no term in the contract that states that provision of the Supplemental Rider to pay the Gemini obligation survived closing and (iii) the "increase in the "purchase price" was "payable at closing" almost two years ago, my attorneys advise me that the provisions of the Contract dealing with the Gemini obligation merged into the deed when it was delivered at closing and it is simply too late to collect an "increase in the purchase price" that would have been due at closing.

{00824951.DOCX;5 }

13. The second liability Shohat complains about is an alleged liability to the City of New York. This claim, like Gemini Capricorn's is also not on US Suite's balance sheet. Also, the City of New York filed a proof of claim in the Debtor's chapter 11 case. The City and the Debtor have entered into a settlement agreement that resolves the City's claims, which, if the Court approves the settlement agreement, the settlement will be paid upon confirmation of the Debtor's plan. Notably, the settlement negotiated by the Debtor also calls for the discontinuance of the City's nuisance abatement litigation against US Suite.

14. The Debtor has entered into this settlement with the City not because of the liability under the Contract, but because the City's claims are of an *in rem* nature and continue against the Property even after the Debtor acquired same. Because these claims affect the property, I believed it was appropriate and necessary as the property owner for the Debtor to resolve them as provided for in the stipulation and order which is being presented to the Court for approval.

15. The Debtor purchased a building from US Suite. It did not purchase US Suite membership interests and there is no provision in the contract whereby the Debtor agreed to assume any of US Suite's liabilities. Shohat's Declaration goes out of its way to avoid citing to any specific language in the Contract or in the two Riders which supports its outlandish claim that the Debtor, by purchasing an asset from it, assumed its entire portfolio of liabilities, including liabilities which are still unknown to US Suite two years after the closing. What the Debtor actually did, and what the Contract actually says, is that the Debtor assumed certain specified liabilities

<u>affecting the Premises.</u> Rider to Contract at ¶16.[3] In other words, if it did not show up on a title policy as a liability against the Property, the Debtor did not assume it.

16. Shohat's declaration spends significant effort trying to show something that does not exist, a connection between the Debtor and U-Trend's partner, Ben Suky. Shohat's recitation of years of purported history of dealings between the two is simply irrelevant to whether the Debtor has a contractual liability to US Suite. The Contract was assigned based on the consent given by <u>Shohat's counsel on the record before Judge Ramos.</u> His subjective intent doesn't really matter about whether he liked Mr. Assa or not, or whether he favored the original Contract. His view on the subject of Mr. Suky is also not surprising given that Suky had him falsely arrested for stealing $15,000 from the Property.[4] Shohat apparently has many axes to grind.

17. Shohat indicated that Robert Rimberg, a creditor of the Debtor's estate who provided legal services to the Debtor in connection with the litigation before Judge Ramos, allegedly informed Shohat that he was Assa's partner. This statement is categorically untrue. Rimburg's Declaration is submitted herewith and speaks for itself. Perhaps the fact that English is not Shohat's native language is responsible for this and several additional false allegations in his Declaration.

18. The several paragraphs in Shohat's declaration regarding the connections between his partner, Ben Suky and Mr. Assa are equally irrelevant. Neither Assa nor Suky have any interest in the Debtor. Therefore these issues are nothing more than hearsay

---

[3] "Purchaser shall take title subject to all liabilities, violations, liens and encumbrances <u>affecting the Premises</u> with the sole exceptions of the SDF92 Mortgage and the indebtedness owed to U-Trend New York Investments L.P…."

[4] *See*, Jewish Forward, February 21, 2014 (Reporting on lawsuit arising out of February 21, 2013 arrest of Tomer Shohat in connection with alleged theft of $15,000 in petty cash from 440 West 41st Street that was later determined to have been falsified.) David Jaroslowicz represented Shohat in the resulting civil lawsuit against Suky, the City of New York and the arresting officer.

irrelevancies—more mud for Shohat to throw against the wall to see who else he can get dirty besides himself for investing with Ben Suky in the first instance.

19.    Shohat claims that in February and March 2016 US Suite put the Debtor on notice of claims against it under the Contract and that the Debtor filed bankruptcy to escape those claims. Shohat Declaration at ¶42, Exhibits 8 and 9. This is preposterous.

20.    I have reviewed Exhibits 8 and 9 which purport to be letters mailed to West 41 Property LLC by certified mail, Return receipt requested to the Debtor at an address of 244 Fifth Avenue, Suite 2234, New York, New York.

21.    I would point out that neither letter includes the return receipt. I suspect the reason for that is that they do not exist. <u>West 41 Property LLC has never done business and at that address</u>. I have never given Morrison Cohen that address for the Debtor and, in any event, the Debtor never received those notices.[5] Moreover, Morrison Cohen knew who my counsel was yet they did not copy Robinson Brog on either of the letters. This all seems intentional to make sure the notices would not have been received. The reason for the absence of the return receipts appears obvious.

22.    Had the Debtor received those notices it would have rejected them anyway because the Contract (i) did not make the Debtor liable for those obligations, (ii) those obligations did not survive the closing of the Contract, (iii) there is no provision in the Contract which calls for the Debtor to indemnify US Suite for any such obligation, (iv) alternatively, US Suite has not provided proof that it paid those claims which would trigger

---

[5] Since the Shohat Declaration was filed, I looked into that address and discovered that it is the address of D. Dweck, a lawyer who was the organizer of West 41 Property LLC and who used his office address on the formation documents for the entity. However, shortly after closing, the address of West 41 Property was changed with the Secretary of State to 115 Broadway, Suite 302, New York, New York 10006, our actual business address. In any event, Morrison Cohen knew who my counsel was, and if they wanted to make sure the notice was received, they could have easily sent the notice to Robinson Brog, who would have forwarded it to me.

a claim for indemnity and (v) US Suite has no standing to assert the claims because they are not the creditor holding the claim against the Debtor.

23. Finally, I am personally dismayed that Morrison Cohen, a firm that I previously thought was a reputable firm, would be so desperate to justify what is plainly a false and inflated claim that they would resort to including a reference to a criminal conviction which is over ten years old and is thus inadmissible. Knowing they cannot use it as evidence, they reference it not with a certified copy of the conviction, but with a reference to a press release from the US Attorney's office. The law firm and the attorneys who did that should be ashamed of themselves.

24. The Shohat Declaration is filled with falsehoods, hearsay, parole evidence and irrelevancies to distract this Court from the fact that its proof of claim has no basis in law or fact.

25. US Suite wants the estate to pay it $28 million even through it cannot identify who it is liable to and in what amounts or who it would pay the funds to if the Debtor were liable to it. On top of that, it wants this court to find the debtor committed fraud for failing to pay the liabilities which US Suite cannot even identify almost two years after the closing. And, of course, the proof of claim contains no evidence that US Suite has actually paid any of these so-called liabilities, further clarifying that making payment to US Suite on this claim would result in nothing more than a total and absolute windfall. The claim is frivolous should be expunged.

Dated:    December 1, 2016
          New York, New York

_____
David Goldwasser