ROBINSON BROG LEINWAND GREENE
  GENOVESE & GLUCK P.C.
875 Third Avenue, 9th Floor
New York, New York 10022
Fred B. Ringel
A. Mitchell Greene
*Attorneys for the Debtor and Debtor in Possession*

HEARING DATE AND TIME:
February 10, 2017 at 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

In re:

WEST 41 PROPERTY LLC,

                         Debtor.
----------------------------------------------------------X

Chapter 11

Case No: 16-22393 (RDD)

## DECLARATION OF DAVID GOLDWASSER IN SUPPORT OF DEBTOR'S REQUEST FOR CONFIRMATION OF FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF WEST 41 PROPERTY LLC

Pursuant to 28 U.S.C. § 1746, I, David Goldwasser, hereby declare as follows:

1.    I am the Managing Member of GC Realty Advisors LLC which is in turn the Managing Member of West 41 Property LLC, the debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**").

2.    I submit this declaration ("**Declaration**") in support of the Debtor's request for an order confirming the First Amended Chapter 11 Plan of Reorganization of West 41 Property LLC, dated December 14, 2016 (ECF No. 116) (as the same has been or may be amended, modified, supplemented, or restated, the "**Plan**"), including the Third Amended Plan Supplement, dated February 3, 2017

{00833637.DOC;1 }

(ECF No. ___) (as the same has been or may be amended, modified, supplemented, or restated, the "**Plan Supplement**") pursuant to section 1129 of the Bankruptcy Code. I have reviewed, and I am generally familiar with, the terms and provisions of the Plan, the documents comprising the Plan Supplement, the Disclosure Statements relating to the Plan, and the requirements for confirmation of the Plan under section 1129 of the Bankruptcy Code. I was personally involved in the development and negotiations regarding the Plan and its related documents.[1]

3.    Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the Debtor's Managing Agent, J&C Lamb Management Corporation or my opinions based upon experience, knowledge, and information concerning the Debtor's operations and the multi-family residential real estate industry. I, along with the Debtor's accountant, oversaw and prepared the liquidation analysis described herein and in the Disclosure Statement. If called upon to testify, I could and would testify to the facts set forth herein. I am authorized to submit this Declaration on behalf of the Debtor.

**Events Leading to the Filing of This Chapter 11 Case**

4.    The Debtor owns the real property and improvements located at 440 West 41st Street, New York, New York (the "**Property**"). The Property is improved

---

[1] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the *Debtor's First Amended Plan of Reorganization.*

by a 13 story building which currently contains multi-family residential apartments and several commercial units which are in the process of being renovated. The Property has 96 residential units and will have, when renovations are completed, approximately 108 residential units and an undetermined number of commercial units. The Debtor purchased the Property and has operated it since April 2015.

5.   The Property was in a distressed state when it was acquired by the Debtor on April 1, 2015. The prior owner of the Property had made a determination to convert the Property from a multi-family residential apartment building into a hotel. However, the prior owner never completed the conversion and did not install the appropriate equipment needed to operate a hotel or the necessary safety equipment for transient use. As a result of the partially completed conversion, the Property was unable to legally operate as a hotel and had come to the attention of the City of New York and the Mayor's Office of Special Enforcement through the prior owner, US Suite LLC, having advertised and marketed the property for short-term transient use and occupancy that the City claimed was illegal.

6.   The City had alleged in a nuisance abatement action commenced in New York Supreme Court in January 2015 that the prior owner had been leasing rooms on a short term stay basis despite the fact that it apparently did not have the proper certificate of occupancy for leasing transient accommodations. The prior owners leasing activity and the Property's "half finished" state resulted in the Property being issued numerous violations by the City of New York related to the transient use and orders to cease renting the Property to short stay/transient users.

7. As a result of the City's nuisance abatement litigation and the City's continual imposition of violations at the Property as well as the need for substantial renovation and repairs in order to bring the Property into compliance with New York City local laws, the Debtor was unable to service its debt and move forward with the property renovations simultaneously. As a result, the Debtor fell behind on its debt service to Stabilis and to avoid the possible loss of the property to a foreclosure, filed the chapter 11 case to buy time to allow the Debtor to resolve its issues with the City of New York and to make substantial progress in its program to renovate the property and achieve compliance with local law.

8. On March 25, 2016, (the "**Petition Date**") the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

**The Plan**

9. On December 16, 2016, the Debtor filed its First Amended Plan of Reorganization. The Plan described provides for the Allowed Claims of creditors to be satisfied in two steps.

10. First, the Plan Fund will be funded by SF IV Bridge I LP ("Stabilis" or "DIP Lender") in an amount, in addition to the Debtor's Available Cash on the Effective Date, which will pay, in full, on the Effective Date, (i) the Allowed Claims in Classes 1, 3, 4, 5 and Administrative Claims, Priority Tax Claims and Fee Claims (including the Estimated Professional Fee Escrow); (ii) to fund the Disputed Claim Reserves; (iii) to fund reserves for Post-Confirmation Legal Fees; and (iv) to fund reserves for Plan Administrator fees and expenses subsequent to the Effective Date

{00833637.DOC;1 }                                4

(collectively, the "Plan Fund"). The amount paid by Stabilis to fund the Plan Fund, will be added to the Allowed Claim of Stabilis. As a result, all creditors holding Allowed Claims except for the claims held by Stabilis will have been paid in full on the Effective Date or their claims will have been reserved for in the Disputed Claim Reserve.

11. Second, the Plan provides for the sale of Property (the "Sale Transaction") pursuant to the Purchase Agreement after a post-confirmation marketing period of up to a maximum of six (6) months, which may be extended by the Plan Administrator, after consultation with Stabilis, for up to an additional three (3) months, if an acceptable purchase price for the Property has not been offered (as determined by the Plan Administrator in consultation with Stabilis). The Purchase Agreement provides for Stabilis to be the "stalking horse" bidder for the Property at an amount of not less than $50,000,000[2] in accordance with section 363(k) of the Bankruptcy Code, subject to higher or better bids achieved in accordance with bids submitted at or prior to the Bid Deadline after marketing of the Property by Rosewood Realty Group, the Real Estate Broker retained by the Debtor. The marketing will be done pursuant to the Sale and Bid Procedures approved by the Court in connection with confirmation of the Plan. A form of asset

---

[2] The exact amount of the Staking Horse Bid will be announced by the Plan Administrator in conjunction with the finalization of the date for the auction under the Sale and Bidding Procedures. The amount of the Stabilis Staking Horse Bid cannot be finally determined at this time and may increase, at the discretion of Stabilis, for (i) any additional advances under the DIP Facility made prior to the Effective Date of the Plan (ii) for interest on the Stabilis Class 2 Claim and the DIP Facility, and (iii) for interest on the Plan Fund advance at the rate of 10.5%, less (iv) any payments made by the Debtor prior to the closing of the Sale.

purchase agreement, which all bidders must use in connection with the Sale Transaction, will be included in the Plan Supplement and made available to all bidders.

12. If there are multiple offers for the Property, the Plan Administrator will conduct an auction in accordance with the Bidding Procedures. At the conclusion of the auction, a successful bidder will be selected by the Plan Administrator and the Plan Administration will seek Bankruptcy Court approval to close the Sale Transaction with the highest bidder for the Property, with the second highest bidder serving as the back-up bidder. Upon the closing of the proposed Sale Transaction, the Plan provides that the proceeds will be distributed to holders of Allowed Class 2 Secured Claims and Allowed Class 6 Existing Equity Interests in accordance with the terms of the Plan.

13. In the event no bids are submitted by the bid deadline established under the Bid Procedures, then the Plan Administrator will be authorized to sell the Property to the Stalking Horse Bidder in accordance with the terms of the Confirmation Order.

14. The Plan has been structured so that all creditors holding Allowed Claims[3] will be paid on the Effective Date will not have to wait for the closing of the sale of the Property to receive payment under the Plan, but will be paid from the Plan Fund.

---

[3] Except for Stabilis who is providing the Plan Fund.

15. On December 19, 2016, the Bankruptcy Court approved the Debtor's Disclosure Statement and the Debtor began soliciting votes with respect to its Plan. If confirmed, the Plan will allow for Unsecured Creditors holding Allowed Claims to be paid in full, the claims of the City of New York to be satisfied in accordance with the City Global Settlement Stipulation which was approved by the Bankruptcy Court and the Secured Claim of the DIP lender and SF IV Bridge I LP to be satisfied either from the sale proceeds or through a credit bid under section 363(k) of the Bankruptcy Code.

### The Plan Satisfies Section 1129 of the Bankruptcy Code

16. On the basis of my understanding of the Plan, the events that have occurred prior to and during the Debtor's Chapter 11 Case, and discussions I have had with the Debtor's legal counsel regarding various orders entered during this Chapter 11 Case and the requirements of the Bankruptcy Code, I believe that the Plan satisfies all of the applicable requirements of section 1129(a) of the Bankruptcy Code as described in this declaration.

17. <u>Bankruptcy Code Section 1129(a)(1).</u> On the basis of my understanding of the Bankruptcy Code, I believe the Plan complies with section 1129(a)(1) of the Bankruptcy Code because the Plan complies with Bankruptcy Code Sections 1122 and 1123.

18. <u>Bankruptcy Code Section 1122.</u> The Plan designates the classification of Claims and Interests. The Plan provides for the separate classification of Claims against and Interests in each Debtor based upon the

differences in legal nature and/or priority of such Claims and Interests. In total, there are six (6) Classes of Claims against and Interests in the Debtors as follows:[4] Class 1 (Other Priority Claims); Class 2 (Stabilis Secured Claims); Class 3 (Other Secured Claims); Class 4 (City of New York Claims); Class 5 (General Unsecured Claims); Class 6 (Existing Equity Interests). Each Class contains only Claims or Interests that are substantially similar to one another. The classification scheme was not proposed to create a consenting impaired Class or to manipulate voting.

19.     <u>Bankruptcy Code Section 1123(a)(1).</u> The Plan designates Classes of Claims, other than Claims of the type described in sections 507(a)(2), 507(a)(3), and 507(a)(8) of the Bankruptcy Code.

20.     <u>Bankruptcy Code Section 1123(a)(2).</u> The Plan identifies each Class of Claims and Interests that is not impaired under the Plan.

21.     <u>Bankruptcy Code Section 1123(a)(3).</u> The Plan sets forth the treatment of impaired Claims and Interests.

22.     <u>Bankruptcy Code Section 1123(a)(4).</u> The Plan provides that, except as otherwise agreed to by a holder of a particular Claim or Interest, the treatment of each Claim or Interest in each particular Class is the same as the treatment of each other Claim or Interest in such Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

---

[4] Administrative Claims, Fee Claims, Priority Tax Claims and DIP Claims are not classified and are separately treated.

{00833637.DOC;1 }                                          8

23. <u>Bankruptcy Code Section 1123(a)(5).</u> The Plan provides adequate means for implementation of the Plan as required by section 1123(a)(5) through, among other things: (i) the Plan Fund and the funds that will be available to the reorganized Debtor thereunder and (ii) the Sale Transaction and the proceeds which will be available as a result thereof or the availability of the Property to satisfy the DIP Lender and Secured Class 2 Claim as a result of a credit bid under section 363(k) of the Bankruptcy Code.

24. <u>Bankruptcy Code Section 1123(a)(6).</u> The limited liability company agreement of the Debtor has been or will be amended on or prior to the Effective Date to prohibit the issuance of non-voting equity securities.

25. <u>Bankruptcy Code Section 1123(a)(7).</u> In accordance with section 6 of the Plan, the composition of the board of managers and the officers of the Reorganized Debtor, will the same as it was prior to the Effective Date and accordingly has been disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code. I believe that the Plan provisions governing the manner of selection of any officer or manager under the Plan are consistent with the interests of creditors and equity security holders and with public policy.

26. <u>Bankruptcy Code Section 1123(b)(1).</u> The Plan describes the treatment for the following Unimpaired Classes: Class 1 (Other Priority Claims), Class 3 (Other Secured Claims) and Class 5 (General Unsecured Claims. Section 4 of the Plan also describes the treatment for the following Impaired Classes: Class 2 (Stabilis Secured Claims), Class 4 (City of New York Claims), and Class 6

(Existing Equity Interests).

27.   __Bankruptcy Code Section 1123(b)(2).__ The Plan provides for the assumption or rejection of executory contracts and unexpired leases that have not been previously assumed or rejected under section 365 of the Bankruptcy Code.

28.   __Bankruptcy Code Section 1123(b)(3).__ The Plan preserves for the Reorganized Debtors any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date, except as otherwise provided in the Plan.

29.   __Bankruptcy Code Section 1123(b)(5).__ The Plan modifies the rights of holders of Claims in Class 2 (Stabilis Secured Claims), Class 4 (City of New York Claims) and Class 6 (Existing Equity Interests), and leaves unaffected the rights of holders of Claims in Classes 1 (Other Priority Claims), Class 3 (Other Secured Claims) and Class 5 (General Unsecured Claims).

30.   __Bankruptcy Code Section 1123(b)(6).__ The Plan contains certain release and exculpation provisions, which, on the basis of my understanding, are consistent with the Bankruptcy Code and Second Circuit law.

31.   __Bankruptcy Code Section 1123(d).__ Under section 9 of the Plan, all executory contracts and unexpired leases not previously assumed or rejected or assumed and assigned will be automatically deemed assumed pursuant to section 365 and 1123(d) of the Bankruptcy Code and assigned to the Purchaser of the Property unless the agreement is specifically described in the Purchase Agreement as being rejected in connection with the confirmation of the Plan or the Purchase

agreement or is subject to a pending motion to reject on the Effective Date or otherwise not being assumed as set forth in section 9.1 of the Plan. The Debtors have paid or will pay Cure amounts in the ordinary course.

32. Based upon the foregoing, I believe the Plan complies fully with the requirements of sections 1122 and 1123. Therefore, the Plan satisfies the requirement of section 1129(a)(1) of the Bankruptcy Code.

33. <u>Bankruptcy Code Section 1129(a)(2).</u> I believe that the Debtor has complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126 of the Bankruptcy Code regarding disclosure and plan solicitation. The Debtor, with the assistance of their professionals, expended a significant amount of time and effort preparing the Disclosure Statement. On December 19, 2016, the Court approved the Disclosure Statement as having adequate information for a hypothetical investor to make an informed decision regarding the Plan.

34. In addition, the Debtor has solicited and tabulated of votes with respect to the Plan in accordance with the Court's order authorizing same.. Accordingly, based on my understanding of the Bankruptcy Code, I believe the Debtor has complied with section 1129(a)(2) of the Bankruptcy Code.

35. <u>Bankruptcy Code Section 1129(a)(3).</u> I believe the Plans' unanimous acceptance by impaired classes of claims and the arms length negotiations among the parties in interest, their respective advisers and counsel, leading to the Plans' formulation provides independent evidence of the Debtor's good faith in proposing the Plan.

36.     <u>Bankruptcy Code Section 1129(a)(4).</u> It is my understanding that all payments for services provided to the Debtors during the Chapter 11 Cases must be approved by the Court as reasonable and the Plan satisfies this requirement.

37.     <u>Bankruptcy Code Section 1129(a)(5).</u> Based on my understanding of the Bankruptcy Code, the Debtor has satisfied the requirements of Bankruptcy Code section 1129(a)(5). In accordance with the provisions of the Plan, from and after the Effective Date, the board of managers and officers, of the Reorganized Debtor shall consist of those individuals set forth in the Plan.

38.     <u>Bankruptcy Code Section 1129(a)(6).</u> The Plan does not provide for any rate changes by the Debtor.

39.     <u>Bankruptcy Code Section 1129(a)(7).</u> I believe that the Liquidation Analysis demonstrates that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. I understand that the Bankruptcy Code requires that, with respect to each impaired Class of Claims and Interests, each holder of a claim or equity interest must either (a) accept the plan or (b) receive or retain under the plan property having a present value, as of the effective date of the plan, that is not less than the amount such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code. For purposes of determining whether the Plan meets this requirement, the Debtor, in consultation with its accountants and the Debtor's counsel, prepared an estimated liquidation analysis as set forth in Exhibit Plan Supplement (the "Liquidation Analysis"), which I hereby incorporate by reference.

40. As described in more detail in the Liquidation Analysis, under chapter 7 of the Bankruptcy Code, I believe that the cash available for distribution to creditors would consist of the Debtor's cash on hand, funds in an escrow account and the proceeds resulting from the sale of the Debtors Property and air rights. Such cash amount would be reduced by the costs and expenses of the liquidation, including, but not limited to, the appointment of a trustee and the trustee's employment of attorneys and other professionals, and transaction fees related to the sale of the Property and its air rights. The recovery of value under a chapter 7 liquidation may also be limited by projected market impediments, including reduced recoveries from discounts buyers would require given a shorter due diligence period, negative perceptions involved in liquidation sales and the "bargain hunting" mentality of liquidation sales, the current state of the capital markets, and the limited universe of prospective buyers. The Liquidation Analysis assumes an orderly and expedited liquidation of the Debtor's assets and assumes that the liquidation would occur over the three to six month period following the appointment or election of a chapter 7 trustee.

41. As set forth in the Liquidation Analysis, it is my belief the best interests test is satisfied as to every single holder of a Claim against or Interest in each Debtor. Specifically, I believe that the Liquidation Analysis demonstrates that all Classes of Claims or Interests will recover value equal to or in excess of what such Claims or Interests would receive in a hypothetical chapter 7 liquidation. Significantly, I believe that holders of Claims in Class 4 (City of New

York Claim) would receive no more than $119,000 remaining in the First American escrow account as opposed to the $375,000 they will receive under the Plan and Class 5 (General Unsecured Claims), who are Unimpaired under the Plan, would receive no recovery in a chapter 7 liquidation. Likewise, I believe that holders of Claims in Class 2 ( Stabilis Secured Claims) are expected to receive a recovery of between 90% and 100% under the Plan, as compared to 72% to 97% in a hypothetical chapter 7 liquidation.

42.   <u>Bankruptcy Code Section 1129(a)(8).</u> Holders of Claims or Interests in Class 1 (Other Priority Claims), Class 3 (Other Secured Claims) and Class 5 (General Unsecured Claims) are not impaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Additionally, as evidenced by the Voting Certification, the Plan has been accepted by well in excess of two-thirds in amount and one-half in number of holders of Claims in Class 2 (Stabilis Secured Claims) and Class 4 (City of New York Claims) entitled to vote and who voted on the Plan. Indeed, the Plan was unanimously accepted by every single holder in each impaired Claims that voted. Thus, based on my understanding of the Bankruptcy Code, as to such Classes, the requirements of section 1128(a)(8) have been satisfied.

43.   Holders of Interests in Class 6 (Existing Equity Interests) are impaired and have also unanimously to accept the Plan.

44.   <u>Bankruptcy Code Section 1129(a)(9).</u> Based on my understanding of the Bankruptcy Code, the Plan complies with section 1129(a)(9) of the Bankruptcy

Code. The Plan provides that holders of allowed Administrative Expense Claims under section 503(b) of the Bankruptcy Code will be paid in full, in Cash, on the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Claim becomes Allowed, unless such holder agrees to less favorable treatment. Moreover, the Plan provides that, unless a holder agrees to less favorable treatment, holders of Allowed Priority Non-Tax Claims under section 507(a) of the Bankruptcy Code will be (i) paid in full, in Cash, on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Claim becomes Allowed, (ii) be Reinstated, or (iii) receive such other treatment so as to render such holder's Claim Unimpaired. Based on my understanding of the Bankruptcy Code, I believe, therefore, that the Plan satisfies the requirements of section 1129(a)(9)(A) and (B).

45. The Plan also satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code in respect of the treatment of Priority Tax Claims under section 507(a)(8). Under the Plan, except as otherwise may be agreed, holders of Allowed Priority Tax Claims will be paid in cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, to the extent such Claim is Allowed on the Effective Date, (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Claim becomes Allowed, or (iii) the date such Claim is due and payable in the ordinary course as such obligation becomes due.

46. <u>Bankruptcy Code Section 1129(a)(10).</u> I believe that the Plan satisfies Bankruptcy Code section 1129(a)(10). As set forth in the Voting Certification, Class 3 (Stabilis Secured Claims) and Class 4 (City of New York Claims are each impaired and have accepted the Plan. Both classes are classes that do not include any insiders in such Class.

47. <u>Bankruptcy Code Section 1129(a)(11).</u> I believe that the Plan is feasible and there is a reasonable probability that the provisions of the plan can be performed. Prior to the Confirmation Hearing, Stabilis will transfer cash into an escrow account maintained by counsel to the Debtor in an amount sufficient to fully fund the Plan Fund. Accordingly, the Debtor will have sufficient available cash to satisfy the claims of all creditors and the reserves required under the Plan, other than the Stabilis Secured Claim, which is being funded through the sale of the Property. The Plan Fund will be sufficient to enable the Debtor to make all payments and distributions as contemplated by the Plan, and therefore the Debtor's reorganization it is not likely to be followed by liquidation or the need for further financial reorganization.

48. <u>Bankruptcy Code Section 1129(a)(12).</u> The Plan provides that on the Effective Date, and thereafter as may be required, all fees payable under section 1930 of title 28 of the U.S. Code, together with interest, if any, pursuant to section 3717 of title 31 of the United States Code, shall be paid by the Reorganized Debtor.

49.  <u>Bankruptcy Code Section 1129(a)(13)</u>.  The Debtor has no retiree benefit plans and accordingly, section 1129(a)(13) is inapplicable.

50.  <u>Bankruptcy Code Section 1129(a)(14)</u>. The Debtor is not responsible for any domestic support obligations and accordingly, section 1129(a)(14) is inapplicable.

51.  <u>Bankruptcy Code Section 1129(a)(15)</u>. The Debtor is not an individual and accordingly, section 1129(a)(15) is not applicable.

52.  <u>Bankruptcy Code Section 1129(a)(16)</u>. The Debtor is a moneyed corporation and thus section 1129(a)(16) is not applicable.

53.  <u>Bankruptcy Code Section 1129(b)</u>.  All impaired classes of claim have voted to accept the plan. Thus, the Debtor is not seeking to confirm the plan under section 1129(b).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: February __, 2017
       New York, New York

*[signature]*
David Goldwasser